UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**REBECCA NEFFERDORF**,

    Plaintiff,

v.                                                                 Case No. 2:21-cv-584-JLB-NPM

**GENERAL INSURANCE COMPANY OF AMERICA**,

    Defendant.
_____

## ORDER

In this underinsured-motorist-insurance-coverage case, the court is confronted with whether it should preclude plaintiff Rebecca Nefferdorf from deposing her insurer's claims adjuster (Doc. 30) and whether it should defer consideration of the defendant insurer's motion for summary judgment until she does (Doc. 82). Finding the contemplated deposition relevant and proportional, the court denies the insurer's motion to preclude the deposition and grants Nefferdorf's motion to defer consideration of summary judgment.

Nefferdorf was involved in a motor vehicle accident as a back-seat passenger in a car driven by Matthew Simpson, which collided with a car driven by Jancarlo Camejo. Apparently based on contentions that both Simpson and Camejo were at fault for her injuries, Nefferdorf made claims against the bodily-injury coverage of both Simpson and Camejo. They each had their own policies with Progressive

American Insurance Company, and, on behalf of its insureds, Progressive paid Nefferdorf the policy limits. Progressive paid Nefferdorf $250,000 under Simpson's policy and $10,000 under Camejo's policy. Nefferdorf also claimed she was entitled to underinsurance benefits under Simpson's policy, and Progressive paid her $50,000 in underinsurance benefits.

This action is against Nefferdorf's insurer, General Insurance Company of America, for underinsured-motorist benefits. The policy limit is $250,000. General has paid her $40,000 under this policy. Its math essentially works like this: Nefferdorf's underinsurance benefit of $40,000 equals the $300,000 sum of the two UIM benefits (Nefferdorf's $250,000 and Simpson's $50,000) less the $260,000 sum of the two BI benefits (Camejo's $10,000 and Simpson's $250,000). The rub is whether the $250,000 paid to Nefferdorf under Simpson's bodily-injury coverage should be included in this equation.

Nefferdorf argues the $250,000 paid to her by Progressive under Simpson's bodily-injury coverage should be excluded from this calculation because it was impossible for her to demonstrate any legal entitlement to it.[1] Her contention—at least for purposes of this action—is that Simpson was wholly without fault and Camejo was the sole tortfeasor. Nefferdorf implicitly asserts the $250,000 was

---

[1] Even though she demanded payment of the $250,000 and, in exchange for its receipt, granted Simpson (and his parents as the owners of the vehicle) a release of all claims arising out of the accident. *See* Doc. 51 at 14; Doc. 51-1; Doc. 51-2.

2

nothing more than a gift—not a resolution of a good-faith contention that Simpson may be liable.[2] And as far-fetched as that might sound,[3] even General suggests that insurance companies may "gratuitously" pay tens of thousands of dollars to claimants. *See* Doc. 76 at 8 n.20 (General's suggestion that Progressive may have paid $50,000 to Nefferdorf "gratuitously" under Simpson's underinsured-motorist coverage).

Against this backdrop, Nefferdorf seeks to depose General's claims adjuster Michael Pagenta about his communications with Progressive and his communications with Nefferdorf's counsel. At bottom, it appears Nefferdorf is seeking concessions that these communications at least implicitly acknowledge that neither Simpson nor Nefferdorf bear any fault for the accident or Nefferdorf's resulting injuries. Such concessions would tend to support Nefferdorf's gift theory.

General seeks to avoid the deposition on grounds of privilege and work-product protection, and it simply rejects Nefferdorf's theory of recovery to argue lack of relevance. But it does not appear that Pagenta's communications with Progressive or Nefferdorf's counsel would be privileged or entitled to work-product

---

[2] A claim for payment pursuant to an insurance policy may not knowingly contain any materially false, incomplete, or misleading information, and be made with an intent to injure, defraud, or deceive an insurer. *See* Fla. Stat. § 817.234(1)(a).

[3] Progressive was originally a defendant in this action, and, in its answer, it alleged that Nefferdorf's negligence was the sole or a contributing cause of the accident. *See* Doc. 2 at ¶ 30.

protection, and privilege and work-product protection can nevertheless be asserted question-by-question during a deposition.[4] Further, resolving the merits of Nefferdorf's theory is for another day.[5] As framed by the pleadings, a deposition of Pagenta about his communications with Progressive or Nefferdorf's counsel is relevant to the parties' claims and defenses and proportionate to the needs of the case. As such, it falls within the scope of discovery. Fed. R. Civ. P. 26(b)(1).[6]

Accordingly, General's motion for protective order (Doc. 30) is **DENIED**, and its motion for leave to file a reply (Doc. 46) is **DENIED as moot**. Nefferdorf's motion to defer summary disposition (Doc. 82) is **GRANTED**. The discovery

---

[4] Generally, "documents constituting any part of a factual inquiry into or evaluation of [an insurance] claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and, therefore, are not work product." *Cutrale Citrus Juices USA, Inc. v. Zurich Am. Ins. Grp.*, No. 5:03-cv-420-Oc-10GRJ, 2004 WL 5215191, *2 (M.D. Fla. Sept. 10, 2004).

[5] The parties filed motions for partial summary judgment months before the dispositive-motion deadline.

[6] Citations to cases predating the 2015 amendments to Rule 26(b) (and even predating the amendments made in 1983, 1993, and 2000, such as *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)), are inappropriate because those decisions concern an outdated version of Rule 26. As the Advisory Committee on Civil Rules noted in 1983: "Rule 26(b)(1) has been amended to add a sentence to deal with the problem of over-discovery. … The new sentence is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." In 1993: "The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery …." In 2000: "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." And in 2015: "Rule 26(b)(1) is changed in several ways. … The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery."

deadline is extended to **October 11, 2022**, but only for Nefferdorf to depose Michael Pagenta about his communications with Progressive or Nefferdorf's counsel. The dispositive motion deadline is extended to **November 1, 2022**, at which time the parties may file memoranda supplementing their pending summary-judgment motions.

        **ORDERED** on September 20, 2022.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE